**Pruitt Office Machines, Inc., Appellant, v. Liberty National Bank of Chicago et al., Appellees.**

**Gen. No. 44,931.**

Heard in the second division of this court for the first district at the October term, 1949. Opinion filed June 2, 1950. Released for publication June 15, 1950.

HERSHENSON & HERSHENSON and JAMES B. McKEON, all of Chicago, for appellant.

FIEDLER & AMBERG, of Chicago, for appellees; THOMAS AMBERG and DANIEL R. LaBAR, both of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff's complaint consisted of two counts, one in equity alleging a vendor's lien and seeking to foreclose it, and one at law to recover $4,000 claimed to be due under the terms of a lease. Defendants filed a motion to dismiss the equity count. The court sustained the motion and dismissed "the complaint in chancery," leaving for trial the issue in law. From this, plaintiff appealed.

Plaintiff was the lessee of a four-story building at La Salle and Hubbard streets, in the City of Chicago. The lease in question was for a period of ten years commencing July 1, 1938. The lessor, if it sold the property or entered into a bona fide contract of sale, was given the right to cancel "at any time so that the term hereunder shall expire and terminate on June 30, 1943, or at the end of any

month thereafter, provided, however, that the lessor . . . shall notify the lessee in writing of her or their intention to cancel this lease at least six months prior thereto. . . ." In a separate paragraph, it was provided that if lessor elected to cancel "and if the lessee shall have complied with the covenants and conditions contained in this lease, including the payment of rent, and shall promptly vacate in accordance with the said notice" lessor would in ten days pay to plaintiff a sum which at the time of termination was fixed by the lease at $4,000.

Plaintiff's theory is that when it vacated the premises pursuant to due notice, it in effect surrendered to lessor an interest in the premises, to-wit: a leasehold which still had one and one-half years to run; that the consideration for this surrender was the payment of $4,000; that lessor having failed to pay $4,000, plaintiff is entitled to a vendor's lien on the interest which it had surrendered to the lessor, but that this interest now having expired, the lien should attach to the entire fee.

To this, defendants reply that plaintiff is not a vendor of any interest in real estate at all; that it surrendered all interest in the real estate before any obligation on the part of the lessor to pay $4,000 arose; that the lessor's obligation is wholly contractual, and that it is dependent upon the fulfillment of a condition, to-wit: compliance by plaintiff with all the provisions of the lease, such as the surrender of the premises in the same condition they were in at the time of the lease, except for loss by fire or ordinary wear.

██ ██ There appears to be no decision of either the Appellate or Supreme Court of this State, holding that one who surrenders or transfers a leasehold estate is entitled to a vendor's lien for the unpaid purchase price. Vendors' liens are a species of equitable

liens. Equitable liens may arise by implication from the conduct and dealings of the parties out of general considerations of right and justice. There must, however, be some ground for the intervention of equity, such as the absence of an adequate remedy at law. The tendency is to limit rather than to extend the doctrine of constructive liens. 53 Corpus Juris Secundum, 844; 43 American Law Reports, 1410; *Schmid v. First Camden Nat. Bank & Trust Co.*, 130 N. J. Eq. 254, 22 Atl. 2d 246; *Franklin v. Hillsdale Land & Cattle Co.*, 70 Ill. App. 297.

Liens are sometimes created by equity in favor of a tenant against a lessor. The best example of this character of lien is to be found in the case of *Oppenheimer v. Szulerecki*, 297 Ill. 81, where a lessor refused to comply with a covenant of the lease requiring her to restore premises rendered untenantable by fire. Lessee having done so, the court held he was entitled to an equitable lien on the premises for the amount expended.

 Vendors' liens are created to prevent the injustice which can arise when a man parts with an interest in land and the vendee retains the property but refuses to pay. It has been held that such a lien applies to an equitable interest and to the sale of a leasehold estate. *Richardson v. Bowman*, 40 Miss. 782; *Fry v. Prewett*, 56 Miss. 783; *Warren v. Fenn*, 28 Barbour (N. Y.) 333; *Rogers Development Co. v. Southern California Real Estate Investment Co.*, 159 Cal. 735, 115 Pac. 934. If, however, it appears from the contract that the parties had themselves intended that there should be only a purely legal liability or if the parties having expressly covered the entire subject matter, have not provided for a lien, a lien will not be created by implication. *Oppenheimer v. Szulerecki, supra; Mihan v. Great Western Sugar Co.*, 121 Neb. 109, 236 N. W. 172, 173 (1931).

In *Oppenheimer v. Szulerecki, supra,* the court made a very pertinent distinction which is applicable here. The lessor in that case had cited authorities which held that where a tenant made improvements in accordance with the provisions of a lease and the landlord agreed to pay for the improvements at the expiration of the term, the tenant would not be given a lien for the amount of the expenditures, but would be limited to his action against the landlord for their value. The court said that the failure to reserve a lien implied that none was intended. The court pointed out that there is a distinction between a liability for an improvement which a tenant agrees to make at his own expense, for which the landlord agrees to reimburse him at the expiration of the term, and a liability for the restoration of a building which a tenant is obliged to make because of a landlord's default. The former case is provided for by contract, while the latter is not, but the rights of the parties in the emergency which was not foreseen and provided for were left to be determined by the general principles of equity and justice.

In the case of *Mihan v. Great Western Sugar Co., supra,* the court quoting 37 Corpus Juris 319, said: "In absence of an express contract, an equitable lien . . . may arise by implication. . . . Such a lien will not be implied or enforced where the facts and circumstances present no grounds for equitable relief, and there is an adequate remedy at law, as where the parties themselves have stipulated for a purely legal liability."

If we should hold that a vendor's lien exists, the rule is that it would apply only to that interest which had been surrendered or transferred. In this case, it was a leasehold interest of one and one-half years duration, and that period has expired. Vendors' liens arise out of general equity considerations, and we

150

must take into account that to apply the principle of an equitable lien by attaching to the entire fee what should be applied only to a leasehold of one and one-half years duration is a very broad extension of the doctrine.

The vital point in the case is this: Was the lessee by its covenant bound to surrender the lease and rely upon the general covenant of lessor to pay $4,000? The lease provided explicitly that if there was a bona fide sale and due notice, lessee was to surrender possession of the premises on the date provided for in the notice. There were therefore only two conditions to the surrender or transfer—bona fide sale and notice. Then, if lessee had complied with all the provisions of the lease, lessor was bound within ten days to pay $4,000. The lease contained covenants on the part of the tenant which were coincident with surrender, such as yielding up the premises in good repair, free of mechanics' liens, free of liability on account of accidents, the replacement of damaged fixtures, etc. Plaintiff does not in its complaint allege that it had done all these things. Even if it had, it was not until ten days thereafter that lessor would be obligated to pay $4,000. It is pertinent to inquire into the reasonable interpretation of the ten-day provision. It could hardly be that lessor desired not only six months, but in addition ten days in which to raise the amount stipulated. The only purpose we can see was to give lessor an opportunity to inquire into the performance of these covenants we have mentioned.

██ In the case of *Kingsley v. Mervyn Realty Co., Inc.,* 123 Misc. 468, 205 N. Y. S. 734, the lease provided as follows: ''In case of sale it is agreed that this lease can be cancelled on the payment to the party of the second part [lessee] of $1500, but it is agreed that the [lessor] shall give [the lessee] 60 days' notice to vacate.'' This notice was given by

lessor, but he mistakenly supposed that he did not have to pay the $1,500 until after the lessee surrendered. This, the court held was wrong. The court however, held that this cancellation clause was not to be treated as "an option to enter into a contract to repurchase. It was a condition, the performance of which would terminate the lease." In the instant case, the only conditions to surrender and cancellation were bona fide sale and notice. *A fortiori,* the surrender did not constitute a transfer of the interest of the lessee for the sum of $4,000.

We are therefore of the opinion that lessee is limited to lessor's legal liability for the satisfaction of his claim.

The order of the superior court of Cook county is affirmed.

*Order affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.